**In re the Termination of the Parent–Child Relationship of L.B. and L.C., Minors**

**Lanny B., Appellant–Respondent,**

v.

**Marion County Department of Child Services, and Child Advocates, Inc.**

and

**Child Advocates, Inc., Appellees–Petitioners.**

No. 49A02–0712–JV–000103.

Court of Appeals of Indiana.

June 27, 2008.

Ann M. Sutton, Marion County Public Defender, Lilaberdia Batties, Batties & Associates, Indianapolis, IN, Attorneys for Appellant L.B.

Jeffery Leeper, Marion County Child Services, Indianapolis, IN, Attorney for Appellee Marion County Department of Child Services.

## OPINION

FRIEDLANDER, Judge.

Lanny B. (Father) appeals the termination of his parental rights in Marion

Superior Court, Juvenile Division, to his children, L.C. and L.B. In so doing, Father presents the following restated issues on appeal:

1. Did the juvenile court commit reversible error in denying Father's motion to dismiss?

2. Did the juvenile court violate Father's constitutional right to due process of law when it denied his request for appointment of counsel during the CHINS proceedings?

3. Did the MCDCS fail to prove by clear and convincing evidence the statutory elements required for termination of Father's parental rights?

We affirm.

Father and Stephanie C. (Mother) are not married, but have been involved in a relationship and have lived together, on and off, for approximately seventeen years. Father and Mother are the biological parents of L.C., born on August 22, 1991, and L.B., born on August 16, 1994. Mother has three additional children including, Ja. C., born on February 16, 2001, Jas.C., born on April 15, 2003, and, T.C., born on September 2, 2006. Father has financially supported and helped to raise all five children as if they were his own.[1]

On July 21, 2004, L.C., L.B., Ja.C., and Jas.C. were taken into temporary protective custody due to an incident of domestic violence between Mother and Father, which occurred in the children's presence. On July 23, 2004, the MCDCS filed a petition alleging all four children were children in need of services (CHINS) citing the incident of domestic violence and Ja. C.'s severely decayed teeth. An initial hearing on the CHINS petition was held on the same day wherein Mother admitted to the allegations of the petition. Father did not appear at the hearing. The juvenile court subsequently found there was probable cause to believe the children were CHINS and issued an order directing the children to remain temporary wards of the MCDCS.

On September 15, 2004, a fact-finding hearing on the CHINS petition was held. Father was present and requested a public defender. Father's request was denied. At the conclusion of the hearing, the juvenile court determined L.C., L.B., Ja.C., and Jas.C. to be CHINS. The juvenile court thereafter formally removed the children from the care and custody of Mother. The court reset the fact-finding hearing as to Father for November 3, 2004.

On November 3, 2004, the juvenile court proceeded to disposition as to Father and ordered the children removed from Father's care and custody. The court then ordered Father, via a Participation Decree, to participate in a variety of services in order to achieve reunification with his children. Specifically, Father was ordered to, among other things: (1) participate in a parenting assessment and successfully complete all resulting recommendations including parenting classes and home-based services; (2) participate in a program addressing issues of domestic violence; (3) submit to a drug and alcohol assessment and follow any resulting recommendations; (4) secure and maintain suitable housing and stable employment; (5) maintain weekly contact with the case manager; (6) exercise regular visitation with the children as recommended by the case manager; and, (7) complete a psychological evaluation.

---

1. The biological fathers of Ja.C., Jas.C., and T.C. are either unknown, or their whereabouts are unknown. Neither Mother nor any of the other fathers are parties to this appeal. Mother did, however, file a separate appeal of the juvenile court's judgment terminating her parental rights to all five children.

Father initially complied with some, but not all, of the court-ordered services. Father completed a parenting assessment, drug and alcohol assessment, parenting classes, and domestic violence classes. Father also obtained and maintained legal employment as a welder. Father failed a drug screen, however, and was therefore ordered to participate in and complete an Intensive Outpatient Program (IOP) in April 2005. Father attended several treatment sessions, but continued to test positive for illegal substances during treatment and eventually quit attending. Father refused to participate in another IOP and refused to submit to subsequent random drug screens despite multiple referrals.

Father's visitation with the children was inconsistent throughout the duration of the CHINS case. When Father did visit with the children, he was oftentimes observed falling asleep and speaking in a negative manner about the foster parents. Father's visitation with the children was eventually suspended due to his inconsistent attendance after a visit on October 26, 2006, where Father became enraged and was observed yelling and screaming in the presence of the children before abruptly leaving the visitation early.

Following a permanency hearing held on June 30, 2005, where Father was present and represented by private counsel, the juvenile court noted that the MCDCS had filed a petition to terminate Father's parental rights to L.C. and L.B. and ordered that the "[p]lan for permanency" be changed from reunification with parents to "termination" of parental rights and "[a]doption." *Exhibits*, Vol. 1 at 31 (Petitioner's Exhibit 13). Father was subsequently assigned a public defender. On November 30, 2006, a hearing commenced on the termination petition. Father did not appear but was represented by counsel. During the hearing, MCDCS caseworker Keith Terrell (Terrell) admitted during cross-examination that notice of the termination hearing had been sent by the clerk of the court. At the conclusion of the MCDCS's case-in-chief, the attorneys for both parents made a joint motion for judgment on the evidence, claiming, among other things, that the MCDCS failed to properly notify the parents of the termination hearing. The juvenile court took the matter under advisement and on December 5, 2006, granted the parents' joint motion and dismissed the MCDCS's termination petition for failure to comply with the notice provision under Ind.Code Ann. § 31-35-2-6.5 (West, PREMISE through 2007 1st Regular Sess.).[2]

Two months later, on February 6, 2007, the MCDCS filed a second petition for the involuntary termination of Father's parental rights to L.C. and L.B. A four-day, consolidated fact-finding hearing commenced on August 22, 2007, continued on September 5 and September 12, 2007, and concluded on September 24, 2007. Father appeared and was represented by counsel. The juvenile court took the matter under advisement and, on September 28, 2007, issued its judgment terminating Father's parental rights to L.C. and L.B. This appeal ensued.

Father argues that the juvenile court's judgment terminating his parental rights to L.C. and L.B. is clearly erroneous. Specifically, Father claims the juvenile court abused its discretion when it denied his motion to dismiss. Father further asserts the juvenile court violated his consti-

---

**2.** I.C. § 31-35-2-6.5(b) states, in pertinent part, "At least ten (10) days before a hearing on a petition or motion under this chapter . . . *the person or entity who filed the petition to* *terminate the parent-child relationship . . . shall send notice* of the review to . . . the child's parents, guardian, or custodian." (Emphasis supplied.)

tutional right to due process of law when it denied his request for appointment of counsel during the CHINS proceedings. Finally, Father contends the MCDCS failed to prove by clear and convincing evidence all the statutory elements of I.C. § 31–35–2–4(b)(2) as is required for the involuntary termination of parental rights. We will address each argument in turn.

### 1.

■ In asserting the trial court abused its discretion by failing to grant his motion to dismiss, Father relies on the doctrine of *res judicata.* Specifically, Father argues that the MCDCS "sought and obtained a second bite at the apple in front of a new magistrate ... after failing on [its] first try to obtain a termination of Father's parental rights." *Appellant's Brief* at 17. Father therefore asserts that the juvenile court's denial of his motion to dismiss constitutes "reversible error." *Id.* The MCDCS counters that its original petition to involuntarily terminate Father's parental rights was dismissed "based on a procedural error" and therefore argues that there "was never a judgment on the merits of the case and *res judicata* does not apply." *Appellee's Brief* at 5.

■ The doctrine of *res judicata* operates to preclude the litigation of matters that have already been litigated. *In re Adoption of Baby W.,* 796 N.E.2d 364 (Ind. Ct.App.2003), *trans. denied.* The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion. *Id.* Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id.* Issue preclusion, also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or issue where the fact or issue was necessarily adjudicated in a former suit and the same fact or

issue is presented in a subsequent action. *Id.* When, as here, a party argues that the claim preclusion component of *res judicata* applies, four factors must be present, namely: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies. *Marsh v. Paternity of Rodgers by Rodgers,* 659 N.E.2d 171 (Ind.Ct.App.1995). The MCDCS concedes in its brief that the first, third, and fourth requirements of *res judicata* have been satisfied. It contends, however, that Father failed to show that the second element, that the former judgment was rendered on the merits, has been satisfied. We agree.

In dismissing the MCDCS's first petition to involuntarily terminate Father's parental rights to L.C. and L.B., the juvenile court explained in its order that compliance with I.C. § 31–35–2–6.5 "is mandatory in termination of parental rights cases in the State of Indiana. The notice provision is a procedural precedent that must be performed before the termination action is commenced. It is not, however, an element that must be proven by the plaintiff in its claim." *Appellant's Appendix* at 75. The court then found the MCDCS failed to present proof that Mother and Father were notified of the termination hearing as mandated by I.C. § 31–35–2–6.5 and ordered that "the Petition to Involuntarily Terminate the Parental Rights of [Mother] and [Father] shall be dismissed for failure to comply with the mandatory provisions of IC 31–35–2–6.5." *Id.*

On this record, we cannot conclude that the juvenile court rendered a judgment on the merits. To the contrary, none of the

matters alleged in the termination petition pursuant to I.C. § 31–35–2–4(b)(2), including whether the conditions resulting in the removal of the children from their parents had been remedied, whether continuation of the parent-child relationship poses a threat to the children's well-being, whether termination of Father's parental rights is in the children's best interests, and whether the MCDCS has a satisfactory plan for the care and treatment of the children, were finally determined. Nor was the case dismissed with prejudice. Accordingly, we find no error. *See, e.g., Thacker v. Bartlett,* 785 N.E.2d 621 (Ind.Ct.App.2003) (concluding that although the trial court's dismissal of plaintiff's original complaint under Trial Rule 12(B)(6) constituted a final judgment, it did not operate as an adjudication on the merits and thus plaintiff's amended complaint was not barred by doctrine of res judicata).

2.

Next, we address Father's contention that he was denied due process of law when the juvenile court denied his request for the appointment of counsel during the CHINS proceedings. In making this argument, Father acknowledges that the United States Constitution "does not require the appointment of counsel in every parental termination proceeding." *Appellant's Brief* at 8. However, Father argues that in the present case, "the complexity of the proceedings and the issues of whether Father had completed services or should be ordered to do additional services ... were too complex for Father to argue without the representation of an attorney skilled in CHINS representation...." *Id.*

 At the outset, we observe that Father failed to raise this argument during the CHINS proceedings. Father also failed to raise his constitutional claim at the termination hearing, despite being represented by counsel. It is well established that we may deem a party's constitutional claim waived when it is raised for the first time on appeal. *In re S.P.H.,* 806 N.E.2d 874 (Ind.Ct.App.2004). Therefore, this issue is waived. *See id.; see also Smith v. Marion County Dep't of Pub. Welfare,* 635 N.E.2d 1144 (Ind.Ct.App.1994) (holding time for appealing an issue in CHINS proceeding commences when the dispositional decree is entered and concluding indigent parent waived right to appeal trial court's denial of her request for counsel during CHINS proceedings when parent raised issue first time on appeal), *trans. denied.* Waiver notwithstanding, because of the great interests at stake in termination proceedings, we choose to address Father's contentions on the merits.

 The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *In re E.E.,* 853 N.E.2d 1037 (Ind.Ct.App. 2006), *trans. denied.* It is well settled that the right to raise one's own children is an "essential, basic right that is more precious than property rights." *In re C.C.,* 788 N.E.2d 847, 852 (Ind.Ct.App.2003), *trans. denied.* Thus, when the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *Lawson v. Marion County Office of Family & Children,* 835 N.E.2d 577 (Ind.Ct. App.2005). However, the "right to appointment of counsel as a due process protection is not absolute." *In re M.M.,* 733 N.E.2d 6, 9 (Ind.Ct.App.2000); *see also Baker v. Marion County Office of Family & Children,* 810 N.E.2d 1035 (Ind.2004) (holding the U.S. Constitution does not require the appointment of counsel in every parental termination proceeding, but only where the trial court's assessment of such factors as the complexity of the proceeding and the capacity of the uncoun-

seled parent indicates an appointment is necessary).

■ Rather than incur the time and expense of litigating eligibility for public counsel in each case, Indiana has chosen to provide counsel in *termination proceedings* to all parents who are indigent. *Id.* at 1039; *see also* Ind.Code Ann. § 31–32–4–1 (West, PREMISE through 2007 1st Regular Sess.). This statutory right to counsel, however, is not guaranteed in CHINS proceedings. To the contrary, I.C. § 31–32–4–3(b) states that a court "*may* appoint counsel to represent any person in any other proceeding." (Emphasis supplied). Thus, although any parent participating in a CHINS proceeding *may* be represented by counsel and parents must be given an opportunity to secure counsel if desired, *see In re R.R.*, 587 N.E.2d 1341 (Ind.Ct.App.1992), there is no *absolute statutory right* to court-appointed counsel in every CHINS proceeding. *See* I.C. § 31–32–4–3.[3] Instead, under the foregoing statute, appointment of counsel in a CHINS proceeding is a matter left to the sound discretion of the juvenile court. We therefore must analyze whether the juvenile court abused its discretion in not appointing counsel for Father in the present case.

■ Whether a juvenile court abuses its discretion in declining to appoint counsel in a CHINS proceeding depends on the "unique facts and circumstances of each case." *In re M.M.*, 733 N.E.2d 6, 11 (Ind. Ct.App.2000). "If lack of counsel is likely to lead to particularly damaging uncontested allegations and if such allegations be deemed established and not subject to sub-

sequent challenge, those allegations might virtually assure a subsequent termination decision." *Id.* In such situations, the juvenile court "might well abuse its discretion by failing to appoint counsel for an indigent parent." *Id.*

■ Here, the record reveals Father requested appointment of counsel during the initial hearing on the CHINS petition, held on September 15, 2004, but that the juvenile court denied Father's request. We first observe that Father did not provide us with the necessary record of the hearing to determine whether he alleged and proved he was indigent under Ind. Code Ann. § 34–10–2 (West, PREMISE through 2007 1st Regular Sess.), which may have entitled him to court-appointed counsel. Failure to develop and provide cogent argument as to this issue preserves nothing for review. *Smith v. Marion County Dep't of Public Welfare*, 635 N.E.2d 1144 (Ind.Ct.App.1994). The CHINS petition alleged the children were in need of services because Father had not provided them with a home free from domestic violence. On appeal, Father fails to point to any specific unchallenged allegations in the CHINS petition that were particularly damaging and as such assured the subsequent termination decision. Rather, it was the evidence of what occurred after the CHINS adjudication, specifically, Father's untreated substance abuse problem, that eventually led to the termination of Father's parental rights.

■ Based on the foregoing, we conclude that Father has failed to show that he was prejudiced when the juvenile court denied his request for court-appoint-

---

**3.** We note that there is statutory authority for a right to appointed counsel in a particular CHINS context other than a termination proceeding. Ind.Code Ann. § 31–34–4–6 (West, PREMISE through 2007 1st Regular Sess.) requires the appointment of counsel to a par-

ent found to be indigent upon that parent's request when a child alleged to be in need of services is temporarily taken into custody prior to a detention hearing. That situation, however, is not present in this appeal.

ed counsel during the CHINS proceedings, inasmuch as he has not demonstrated that the termination hearing would have produced a different result had he been represented by counsel during the CHINS case. "One who seeks to disturb a trial court's judgment must affirmatively show an erroneous ruling and prejudice resulting therefrom." *Id.* at 1149. This court does not presume prejudice and, absent such a showing, we will not disturb the juvenile court's ruling.

### 3.

Lastly, we address Father's contention that the MCDCS failed to prove by clear and convincing evidence the statutory elements set forth in I.C. § 31–35–2–4(b)(2), as is required for the termination of parental rights.

This court has long applied a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832 (Ind.Ct.App.2001). Thus, when reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258 (Ind.Ct.App.2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the juvenile court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204 (Ind.Ct.App.1999), *trans. denied.* If the evidence and inferences support the juvenile court's decision, we must affirm. *Id.*

Here, the juvenile court made specific findings and conclusions thereon in its order terminating Father's parental rights. Where the court enters specific findings and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143 (Ind.2005). First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Perrine v. Marion County Office of Child Servs.,* 866 N.E.2d 269, 273 (Ind.Ct. App.2007).

As stated previously, the traditional right of parents to "establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.,* 666 N.E.2d 73, 76 (Ind.Ct.App.1996), *trans. denied.* However, the juvenile court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *K.S.,* 750 N.E.2d 832. Parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.*

In order to terminate a parent-child relationship, the State is required to allege that:

(A) one (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

* * *

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

I.C. § 31–35–2–4(b)(2). The State must establish each of these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232 (Ind.1992). Father does not contest the fact that L.C. and L.B. were removed from his care, pursuant to a dispositional decree, for at least six months. Father does assert, however, that the MCDCS failed to establish the remaining elements contained in Indiana Code Section 31–35–2–4(b)(2). We address each argument in turn.

When determining whether a reasonable probability exists that the conditions justifying a child's removal and continued placement outside the home will not be remedied, the juvenile court must judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509 (Ind.Ct.App.2001), *trans. denied*. The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children. *M.M. v. Elkhart Office of Family & Children*, 733 N.E.2d 6 (Ind.Ct.App.2000).

Father asserts that he "demonstrated [his] willingness to parent [his] children by completing services prior to the termination hearing ... pursuant to the Agreed Entry." *Appellant's Brief* at 18. Father further asserts that he "submitted to random drug screens ·which were all nega-tive[,] obtained housing, [and] obtained steady employment with Toyoshima Steel, where he had been so employed for approximately three years prior to the second [termination hearing]." *Id.* The MCDCS counters that it produced clear and convincing evidence at trial proving there is a reasonable probability that Father's "substance abuse problem, the reason for the children's continued placement outside the home, would not be remedied." *Appellee's Brief* at 14. We agree.

In terminating Father's parental rights to L.C. and L.B., the juvenile court made the following pertinent findings:

### FINDINGS OF FACT

\* \* \*

5. Services were ordered for Mother and Father to complete toward reunification with the children. The services, court ordered and recommended by the parenting assessment, were for both Mother and Father to complete a parenting class, domestic violence class, and drug screens. In addition, safe and adequate housing and employment were to be maintained and Mother and Father were to consistently visit the children.

6. Both Mother and Father completed parenting classes and domestic violence classes....

7. The initial drug and alcohol assessments found both parents to have a low probability of any Substance Dependency Disorder. However, as a result of Mother testing positive for cocaine in April of 2005, and Father testing positive for illegal substances on urine screens, intensive outpatient substance abuse programs were referred.

\* \* \*

15. An intensive outpatient referral was made for Father to Community Addiction Services of Indiana, Inc., in April of 2005. Father attended five or less of the eight week treatment sessions prior to his treatment being raised a level due to positive screens, lack of participation and falling asleep during some sessions. Father never attended the program after that.

16. A second referral was made for outpatient treatment but Father never followed up. Intensive outpatient treatment, with urine screens, was re-referred six additional times between January and July of 2007, without participation from Father.

17. The Court does not accept Father's excuse that his "mandatory" overtime work schedule led him to be unable to complete services in the twenty-two months since the original CHINS proceeding was filed. Father's Exhibit "F", showing he was currently employed, only shows a twenty-two hour work schedule for that week. Mother acknowledged that he could not be fired as long as he put in his eight hours a day.

18. Mother and Father never came to a point in their services where home based counseling was put in place. In the beginning of the CHINS action, Mother was cooperating with services but Father was not. Father was maintaining the residence and Mother was not working. Concerns about the lack of participation in services, after positive drug screens, made this parental unit ineligible for commencement of home based counseling.

19. There have been no further arrests of Mother or Father and no further record of domestic violence. Because home based counseling has not been commenced, the family case manager and Guardian ad Litem have not observed the interaction between Mother and Father within the home.

20. Father's visitations were sporadic. The last visitation took place prior to November of 2006 at which time visitation was suspended by the court for inconsistent visits, falling asleep during visits[,] and Father being angry to the point of "yelling and screaming[.]"

\* \* \*

28. The children have been out of the parent[s'] home for a considerable amount of time since the original CHINS case was commenced in July of 2004. Given the parent[s'] history of inaction and unwillingness to participate in services, it is unlikely that additional time will remedy the situation and the children will remain in limbo. Services and compliance dates have been given to ... Father by MCDCS, at least three times by certified mail. Although ... Father felt [he had] done everything requested of [him] to have the children returned, the reason for the children still being placed outside the home, substance problems, has never been acknowledged or addressed, even after multiple referrals for treatment and screens.

*Appellant's Appendix* at 19–22. The evidence most favorable to the judgment supports these findings, which in turn support the juvenile court's conclusion that "[t]here is a reasonable probability that the condi-

tions that resulted in the placement of the children outside the home will not be remedied." *Id.* at 22.

Although we acknowledge Father initially participated in and successfully completed several of the court-ordered services, including a parenting assessment and classes, anger management classes, and a drug and alcohol assessment, the record reveals that at the time of the termination hearing Father was no longer in compliance with court-ordered services. Specifically, Father had failed to maintain weekly contact with the case manager and had failed to pay child support for his children for the duration of the CHINS case. Additionally, Father was unsuccessfully discharged from the IOP. Father thereafter refused to participate in a subsequent IOP despite multiple referrals to do so and despite being informed by case manager Keith Terrell that he needed to complete an IOP and submit to random drug screens in order to achieve reunification with his children. Father did neither.

When asked during the termination hearing why he had not completed an IOP, Father initially responded that he worked nights and long hours and was too tired afterwards to participate in an IOP. Father admitted later, however, that he no longer worked nights, but instead worked from 7:00 a.m. until 3:00 p.m. When questioned why, after switching to days, he hadn't "used time after work to do IOP[,]" Father responded, "Well, I have no answer for that." *Transcript* at 306. Moreover, Father's visitation with the children, which was sporadic throughout the CHINS case, was ultimately suspended. By the time of the termination hearing, Father had not visited with his children since prior to November 2006. Also significant was Father's admission during the termination hearing that he continues to use marijuana.

 A juvenile court may properly consider the services offered by the Department of Child Services, and the parent's response to those services, as evidence of whether conditions will be remedied. *In re A.F.*, 762 N.E.2d 1244 (Ind.Ct.App.2002), *trans. denied.* "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke County Office of Family & Children,* 861 N.E.2d 366, 372 (Ind.Ct. App.2007), *trans. denied.* When evaluating a parent's habitual pattern of conduct, courts have properly considered, among other things, evidence of a parent's prior drug and alcohol abuse, history of neglect, and failure to provide financial support. *Lang v. Starke County Office of Family & Children,* 861 N.E.2d 366. Additionally, the failure to exercise the right to visit one's own children "demonstrates a lack of commitment to complete the actions necessary to preserve [the] parent-child relationship." *Id.* at 372 (internal quotation omitted). Based on the foregoing, we find that the juvenile court's determination that the reasons for the children's continued placement outside Father's care would not be remedied is supported by clear and convincing evidence.

 Next, we address Father's assertion that the juvenile court erred when it found termination of his parental rights is in the children's best interests. In making this claim, Father fails to provide any cogent argument or citation to authority to support his allegation. Thus, this issue is waived. *See* Indiana Appellate Rule 46(A)(8)(a) (the contentions of the appellant on the issues presented "must be supported by citations to authorities, statutes, and the Appendix or parts of the Record

on appeal relied on"). Waiver notwithstanding, we will address Father's contention on the merits.

 In determining what is in the best interests of the children, the court is required to look beyond the factors identified by the Department of Child Services and look to the totality of the evidence. *McBride v. Monroe County Office of Family & Children*, 798 N.E.2d 185 (Ind.Ct. App.2003). The purpose of terminating parental rights is not to punish the parents but to protect the children involved. *In re K.S.*, 750 N.E.2d 832. The juvenile court must therefore subordinate the interests of the parents to those of the children when determining the best interests of the children. *McBride v. Monroe County Office of Family & Children*, 798 N.E.2d 185. Additionally, the juvenile court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.*

In determining that the termination of Father's parental rights is in L.C.'s and L.B.'s best interests, the juvenile court made the following pertinent findings:

23. [L.B.] and [L.C.] are placed together in therapeutic foster care. [L.B.] is receiving counseling for Anxiety, and is improving. [L.C.] suffers from Borderline Intellectual Functioning and requires extra support, tutoring, therapy and additional time working on living skills.

24. [L.B.] and [L.C.'s] placement is pre-adoptive.

25. Keith Terrell, the MCDCS family case manager, observed the children to be bonded with their foster parents.

26. The most proper placement for the children is to remain where they are and have been receiving therapeutic care for their special needs.

27. It is in the best interests of the children that they receive the feeling of stability and security that a permanent home will provide.

\* \* \*

29. Shirley Murff, as Guardian ad Litem, believes it to be in the best interests of the children to proceed with termination given the time that has elapsed and lack of participation in services by the parents. The eldest child, [L.C.], is the only child that expressed a wish to return to live with her parents.

*Appellant's Appendix* at 21–22. The record reveals that these finding are supported by testimony from the Guardian ad Litem (GAL) and current MCDCS case manager. GAL Shirley Murff (Murff) testified that she had visited with all the children in their current placements and agreed with the MCDCS's permanency plan for the children, namely, termination of Father's parental rights and adoption by their current foster parents. In so doing, Murff stated that all five of the children are "doing well" in their current foster care placement. *Transcript* at 469. Similarly, case manager Terrell testified that termination was in the children's best interests. Specifically, Terrell stated that the children are "doing very well in placement and they have bonded" with their foster parents. *Id.* at 384. Terrell further stated that he could not recommend returning the children to Father because of his lack of participation in services and continued drug use.

Our review of the record leaves this court convinced that although Father may have established he has a sincere desire to be reunited with his children, the testimony set forth above, coupled with the evidence of Father's current drug use, his

failure to complete court-ordered services, and the fact the children were happy, bonded with and doing well in their pre-adoptive foster homes, is sufficient to support the juvenile court's determination that termination of Father's parental rights is in the children's best interests. *See In re A.I.*, 825 N.E.2d 798 (Ind.Ct.App.2005) (concluding that testimony of the court appointed special advocate and family case manager, coupled with evidence that the conditions resulting in placement outside the home will not be remedied, was sufficient to prove by clear and convincing evidence that termination was in child's best interest), *trans. denied.*

██ Father's final contention is that the MCDCS failed to prove it had a satisfactory plan for the care and treatment of the children. In particular, he claims the evidence "was clear that Father had bonded with his children. Erin Michael Jolliff, Father's former case manager, testified that the children loved their father and that it was obvious that he loved them." *Appellant's Brief* at 18.

In finding that the MCDCS had a satisfactory plan for the care and treatment of L.C. and L.B., the trial court found:

21. Mother and Father both want the five children to be placed with Father's parents.... Even without the Court's concerns regarding the grandparent's health and the number of children already residing with them, there has been no contact between the four eldest children and the [grandparents] for three years....

22. This Court is without jurisdiction to collaterally attack the placement order issued from the CHINS Court, and must only find that the plan for the care and treatment of the children put forward by MCDCS is proven to be satisfacto-

ry. Paternal grandparent's remedy would be to file for, or intervene in, an adoption.

\* \* \*

24. [L.B.] and [L.C.'s] placement is pre-adoptive.

*Appellant's Appendix* at 21. The trial court subsequently concluded there was "a satisfactory plan for the care and treatment of the children, that being adoption by the current caregivers." *Id.* at 22.

██ As stated earlier, in order for the juvenile court to terminate a parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. I.C. § 31–35–2–4(b)(2)(D). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *In re D.D.*, 804 N.E.2d 258.

At the termination hearing, Terrell testified that the MCDCS's plan for the care and treatment of the children is adoption by their current foster parents. Terrell further testified that L.C. and L.B. are in therapeutic foster care together, and that all the children were doing very well in their current placements. In light of this evidence, we cannot conclude that the plan set forth by the MCDCS for the adoption of the children is unsatisfactory. *See Castro v. State Office of Family & Children*, 842 N.E.2d 367 (Ind.Ct.App.2006) (observing that adoption is generally a satisfactory plan for the care and treatment of children after termination of parental rights), *trans. denied.*

In sum, we conclude that the juvenile court properly determined that the MCDCS's second petition for the involuntary termination of Father's paternal rights to L.C. and L.B. was not barred by the doctrine of res judicata because the

first petition was dismissed without prejudice due to a procedural error and did not finally determine the underlying issues on the merits. Additionally, Father has failed to demonstrate, and we do not see, how the result in his termination case would have been different if counsel had been appointed during the CHINS proceeding. We therefore conclude that the juvenile court did not abuse its discretion when it denied Father's request for counsel. Finally, the record reveals that the MCDCS proved by clear and convincing evidence all the statutory elements required for the termination of Father's parental rights to L.C. and L.B.

As stated previously, we reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Matter of A.N.J.*, 690 N.E.2d 716, 722 (Ind.Ct.App. 1997) (quoting *In re Egly*, 592 N.E.2d at 1235). Based on the record before us, we cannot say that the juvenile court's termination of Father's parental rights to L.C. and L.B. was clearly erroneous. We therefore affirm the juvenile court's judgment.

Affirmed.

KIRSCH, J. and BAILEY, J., concur.