**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT
R.W.B.:

**TIMOTHY E. STUCKY**
Blume, Connelly, Jordan, Stucky & Lauer, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLANT
Z.T.B.:

**MARK A. THOMA**
Leonard, Hammond, Thomas &Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) ) | |
| R.A.B. (Minor Child) | ) ) | |
| And | ) ) | |
| Z.T.B. (Mother) & R.W.B. (Father), | ) ) | |
| Appellants/Respondents, | ) ) | |
| vs. | ) ) | No. 02A03-1306-JT-234 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee/Petitioner. | ) ) | |

January 23, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

### Case Summary

Z.T.B. ("Mother") and R.W.B. ("Father") appeal the termination of their parental rights to their three-year-old son, R.A.B. They argue that termination of their rights was not in R.A.B.'s best interests and adoption by his foster parents was not a satisfactory plan for his care and treatment. But R.A.B. has been in foster care since he was four months old, and since that time, neither parent has shown that they are capable of caring for him. R.A.B. is thriving in his foster home and is bonded to his foster parents, who have been approved to adopt him. We therefore conclude that there is sufficient evidence to support the trial court's decision to terminate Mother's and Father's parental rights. We affirm.

### Facts and Procedural History

Mother has been diagnosed with bipolar disorder and manic depression. On May 1, 2010, Mother went to the hospital for an "episode." She was released that day. The following day, Mother, who had been wandering around outside wearing only a t-shirt and underwear, asked staff at her apartment complex to watch four-month-old R.A.B. She then returned to the hospital. When she arrived, Mother became physically aggressive with medical personnel who tried to subdue her. Mother admitted that she

was not taking her medications, was using marijuana, and was the victim of recent domestic violence. As a result of Mother's interactions with medical professionals, the local Allen County Department of Child Services ("ACDCS") took custody of R.A.B. and filed a petition alleging that he was a child in need of services ("CHINS"). At this time, Father, whose paternity had not been established, was incarcerated for battering Mother.

After a fact-finding hearing, the trial court adjudicated R.A.B. a CHINS. The court ordered Mother to cooperate with caseworkers, establish R.A.B.'s paternity, refrain from criminal activity, maintain appropriate housing, participate in mental-health and substance-abuse services, take all prescribed medications, submit to random drug screens, and attend scheduled parenting time with R.A.B. As R.A.B.'s putative father, Father was ordered to formally establish paternity, cooperate with caseworkers, refrain from criminal activity, obtain appropriate housing, participate in anger-management and mental-health services, and submit to random drug screens.

With each status hearing, it became more apparent that Mother would not comply with the case plan or follow the court's orders. She did not complete mental-health or substance-abuse services, take her medications as prescribed, or exercise regular parenting time with R.A.B. In February 2011, the trial court warned Mother that if she did not follow its orders, her parental rights could be terminated. But Mother did not heed the court's warning; she continued to refuse services and tested positive for marijuana and cocaine. Meanwhile, Father was not involved in the case plan; he never communicated with caseworkers or participated in services.

In December 2012, ACDCS filed a petition to terminate Mother's and Father's parental rights. The trial court heard evidence on the termination petition over three days in March 2013.

At the hearings, caseworkers testified that Mother failed to complete substance-abuse, mental-health, and other therapeutic services. She continued to struggle with substance-abuse and mental-health issues: she tested positive for marijuana on multiple occasions and cocaine on one occasion, and she refused to take her medications as prescribed. *See* Tr. p. 129-35. ACDCS also presented evidence that Mother's unmanaged substance-abuse and mental-health issues had played a part in arrests for public nudity and disorderly conduct. Caseworkers also explained why Father had been largely absent from the case. In July 2010, he was incarcerated for one year in Illinois. He then violated parole five times, which caused him to be incarcerated for all but four months during the period from January 2011 to February 2013. At the time of the termination hearing, he was incarcerated with an earliest release date of March 2014.

Meanwhile, R.A.B. was thriving in foster care. Emma Robinette, R.A.B.'s court-appointed special advocate ("CASA"), told the court that R.A.B. had progressed since being removed from Mother's care: "[W]hen I first visited him, he didn't cry, he didn't hold his bottle, he didn't play or smile, he just – was kind of there." *Id.* at 69. But now, "[R.A.B.] has really evolved. He's an awesome little boy. I can understand him. He plays. And when you look in his eyes, you know how much love he gets at home." *Id.* CASA Robinette also told the court that Mother did not believe she had done anything wrong or that she should have to participate in services. *Id.* at 83-84. She and her

4

supervisor, Suzanne Lange, recommended terminating Mother's and Father's parental rights. *Id.* at 315.

R.A.B.'s therapist, Deanna Young, also recommended terminating the parents' rights. Young explained that R.A.B., who suffered from separation anxiety, was bonded to his foster family and removing him from their care would disrupt his mental health. *Id.* at 285. She opined that it was in R.A.B.'s best interests to stay with his foster family. *Id.* at 286. Roberta Renbarger, the guardian ad litem ("GAL") assigned to the case, also recommended terminating Mother's and Father's parental rights. *Id.* at 486. GAL Renbarger testified that adoption would "provide the stability that [R.A.B.] needs." *Id.* at 488. The GAL explained that Mother's failure to complete services and Father's criminal history prevented them from providing such stability. *Id.* at 485-86.

ACDCS's plan for R.A.B. was adoption, and R.A.B.'s foster parents had been approved to adopt him. ACDCS had investigated placing R.A.B. with Mother's aunt, Berniece Brown, but ACDCS declined to approve Brown to adopt R.A.B. Brown had never met R.A.B., had "severe physical limitations" and limited income, and was already caring for a number of other children. *Id.* at 453.

At the end of May, the trial court entered its order with findings terminating Mother's and Father's parental rights. *See* Appellant Mother's App. p. 54-65.

Mother and Father now appeal.

**Discussion and Decision**

5

On appeal, Mother and Father argue that termination of their parental rights was not in R.A.B.'s best interests and adoption was not a satisfactory plan for R.A.B.'s care and treatment.[1]

**Termination of Parental Rights**

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations omitted). The parent-child relationship is one of our culture's most valued relationships. *Id.* (citation omitted). "And a parent's interest in the upbringing of their child is 'perhaps the oldest of the fundamental liberty interests recognized by the courts.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But parental rights are not absolute—"children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *Id.* (citations omitted). Thus, a parent's interests must be subordinated to a child's interests when considering a termination petition. *Id.* (citation omitted). A parent's rights may be terminated if the parent is unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* (citations omitted).

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1229 (citation omitted). Instead, we consider only the evidence and reasonable inferences that support the judgment. *Id.* (citation omitted). "Where a trial court has entered findings of fact and conclusions of

---

[1] Mother and Father are represented by separate attorneys and have filed separate appellate briefs; however, they raise the same arguments and support those arguments with nearly identical reasoning.

law, we will not set aside the trial court's findings or judgment unless clearly erroneous." *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, "we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment." *Id.* (citation omitted).

A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

>    (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

>    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

>    (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

>    (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

>    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

>    (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

7

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "DCS must prove the alleged circumstances by clear and convincing evidence." *K.T.K.*, 989 N.E.2d at 1231 (citation omitted). On appeal, Mother and Father challenge the sufficiency of the evidence supporting the trial court's judgment as to subsections (C) and (D) of the termination statute.

### A. Best Interests

Mother and Father first argue that termination of their parental rights was not in R.A.B.'s best interests.

A determination of what is in the best interests of a child should be based on the totality of the circumstances. *See Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied.* A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the child's best interests. *Id.* Trial courts need not wait until a child is irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating a parent's rights. *See K.T.K.*, 989 N.E.2d at 1235. Permanency is a central consideration in determining the best interests of a child. *Id.* (citation omitted).

Mother and Father have waived their best-interests argument because they fail to appropriately develop or support it. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring conclusions to be supported by cogent reasoning" and "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on").

8

Waiver notwithstanding, the evidence in the record supports the conclusion that termination of Mother's and Father's parental rights is in R.A.B.'s best interests.

The trial court found that termination was in R.A.B's best interests because R.A.B. deserved a safe, stable, and nurturing home environment. *See* Appellant Mother's App. p. 65. The court also noted that those involved with the case—GAL Renbarger, CASA Robinette, CASA Robinette's supervisor, and R.A.B.'s therapist—unanimously recommended terminating Mother's and Father's parental rights. *Id.* Notably, the trial court also concluded that there was a reasonable probability that the conditions resulting in R.A.B.'s removal or placement outside Mother's and Father's care would not be remedied, and Mother and Father do not challenge this finding. From this, we conclude that the evidence supports the trial court's determination that termination of Mother's and Father's parental rights was in R.A.B.'s best interests. *See In re A.I.*, 825 N.E.2d 798, 811 (Ind. Ct. App. 2005) (testimony of caseworkers, together with evidence that the conditions resulting in placement outside the home will not be remedied, was sufficient to prove by clear and convincing evidence that termination was in child's best interests) (citation omitted), *trans. denied.*

### B. Satisfactory Plan

Mother and Father also argue that ACDCS lacked a satisfactory plan for R.A.B.'s care and treatment.

In order for the trial court to terminate a parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. Ind. Code § 31-35-2-4(b)(2)(D). That plan need not be detailed, so long as it offers a general sense of

9

the direction the child will go after the parent-child relationship is terminated. *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008).

ACDCS's plan for R.A.B.'s care and treatment was adoption by his foster parents, who had been approved to adopt him. Mother and Father argue that this plan was unsatisfactory because Mother's aunt, Berniece Brown, was willing to care for R.A.B. But ACDCS investigated this potential placement and declined to approve Brown to adopt R.A.B. Brown had never met R.A.B., had "severe physical limitations" and limited income, and was already caring for a number of other children. And to the extent the parents suggest that Brown can care for R.A.B.—without adopting him—until one or both parents are ready to care for him, this would delay permanency for R.A.B. indefinitely. We have repeatedly recognized that children's needs are too substantial to force them to wait while determining if their parents will be able to parent them. *See In re S.P.H.*, 806 N.E.2d 874, 883 (Ind. Ct. App. 2004). At the time of the termination hearing, R.A.B. was three years old and had already spent more than two and a half years in foster care. The trial court did not err in concluding that he should not have to wait any longer for permanency. Mother and Father have not shown that ACDCS's plan of adoption for R.A.B. was unsatisfactory.[2]

Affirmed.

RILEY, J., and MAY, J., concur.

---

[2] In arguing that ACDCS's plan was unsatisfactory, both parents cite *In re R.H.*, 892 N.E.2d 144 (Ind. Ct. App. 2008). But *R.H.* is distinguishable: a key aspect of the Court's analysis in that case was the fact that the father "did everything that was asked of him." *Id.* at 150. That cannot be said of either parent in this case.