**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 14 2013, 5:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Office of the Attorney General
Indianapolis, Indiana

**PATRICK M. RHODES**
DCS Marion County Office
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE INVOLUNTARY        )
TERMINATION OF THE PARENT-CHILD         )
RELATIONSHIP OF:                        )
                                        )
 G.H., (Minor Child),                   )
                                        )
And                                     )
                                        )
D.H. (Father),                          )
                                        )
        Appellant/Respondent,           )
                                        )
            vs.                         )        No. 49A02-1303-JT-284
                                        )
MARION COUNTY DEPARTMENT OF             )
CHILD SERVICES,                         )
                                        )
        Appellee/Petitioner,            )
                                        )
CHILD ADVOCATES, INC.,                  )
                                        )
        Co-Appellee (Guardian Ad Litem).)

**November 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

### Case Summary

D.H. ("Father") appeals the termination of his parental rights to his son, G.H. Father challenges the sufficiency of evidence underlying the trial court's decision to terminate the parent-child relationship. But in the two years leading up to the termination hearing, Father was unable to achieve stability in his personal life due to a number of factors, including his criminal conduct and mental-health issues. He also failed to comply with all of the trial court's orders. In light of these facts, as well as the trauma G.H. experienced and his need for stability, we conclude that there was sufficient evidence to support the trial court's decision to terminate Father's rights. We affirm.

### Facts and Procedural History

In late December 2010, three-year-old G.H. found his mother dead on the bathroom floor. She had overdosed on heroin. Authorities were notified and the local Marion County Department of Child Services ("MCDCS") filed a petition alleging that G.H. was a child in need of services ("CHINS"). MCDCS took custody of G.H. and placed him with his maternal grandparents.

Father appeared at the initial hearing on the CHINS petition and admitted that G.H. was a CHINS. Father also admitted that he had substance-abuse and mental-health

issues, including bi-polar disorder, depression, and attention-deficit hyperactivity disorder diagnoses. The trial court ordered Father to maintain employment and suitable housing, refrain from using illegal drugs, meet with a psychiatrist, take all prescribed medications, and exercise regular parenting time with G.H. He was also ordered to participate in a number of services, including home-based counseling, a substance-abuse assessment, random drug screens, and a psychological evaluation. Father was required to maintain weekly contact with MCDCS so caseworkers could monitor his progress.

Father initially struggled to comply with the court's order. Father was living with his father, but he was asked to leave when he tested positive for methamphetamine. Father did not take his prescribed medication consistently, and he attempted suicide in March 2011.

But Father made progress. He moved in with his stepfather and regularly exercised parenting time with G.H., participated in services, and successfully managed his substance-abuse and mental-health issues. He also finished truck-driving school. In September 2011, the trial court allowed G.H. to live with Father for a short time as a trial home visit.

But shortly after the trial home visit began, Father abruptly stopped communicating with caseworkers. MCDCS learned that Father had stopped taking his medication and police had been called eight times regarding incidents between Father and his girlfriend. One call led to Father's arrest for domestic violence. When a MCDCS caseworker arrived at stepfather's home to remove G.H. from Father's care, the caseworker learned that Father had moved without telling MCDCS. Caseworkers found

3

Father and removed G.H. from his care. G.H. was again placed with his maternal grandparents. He has remained in his grandparents' care since that time.

As a result of Father's arrest, the trial court ordered Father to complete a domestic-violence program. In April 2012, Father was convicted of misdemeanor domestic battery.

In August, MCDCS filed a petition to terminate Father's parental rights. At the evidentiary hearing on the termination petition, caseworkers shed light on the issues Father was struggling with. Though Father made progress before the trial home visit, he had regressed since then. He had not completed the domestic-violence program; he was dismissed for poor attendance. He had stopped taking his medication consistently and had not maintained stable housing or employment; his driver's license was suspended, making it impossible for him to work as a truck driver. Father's criminal conduct was also a concern; in the two years before the termination hearing, Father had been arrested "six or seven times." Tr. p. 67. Father had four felony convictions—three in G.H.'s lifetime—and he had recently been convicted of domestic battery for actions that took place in front of G.H. And at the time of the hearing, Father was incarcerated on felony theft charges. Father admitted that his frequent arrests and periods of incarceration made him unavailable to parent G.H.

Meanwhile, G.H. was thriving in his grandparents' home. After his mother's death, G.H. exhibited signs of acute stress—he had "melt-downs . . . would hurt animals, he would lie a lot, cry a lot, wet his bed . . . , [and] have nightmares . . . ." *Id.* at 32. But now, these signs of stress had decreased and G.H. was doing very well. *Id.* at 34. G.H.'s

4

therapist said that because G.H.'s early life had been "fraught with . . . trauma, chaos, and instability," he "particularly needs [stability]." *Id.* at 36. The therapist explained that "[Father] is just unable to maintain stability in his life and that bo[des] poorly for [G.H.]'s well-being and stability." *Id.* The Guardian ad Litem assigned to the case acknowledged a bond between G.H. and Father but still recommended terminating Father's rights, saying that Father had not proven he could provide the long-term stability that G.H. needed. *Id.* at 149-50. In his grandparents' care, G.H. had security, stability, structure, and love. *Id.* at 148-50.

In February 2013, the trial court entered its order with findings terminating Father's parental rights. *See* Appellant's App. p. 16-18.

Father now appeals.

**Discussion and Decision**

On appeal, Father challenges the sufficiency of evidence underlying the trial court's decision to terminate his parental rights.

**Termination of Parental Rights**

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *K.T.K. v. Indiana Dep't of Child Servs.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations omitted). The parent-child relationship is one of our culture's most valued relationships. *Id.* (citation omitted). "And a parent's interest in the upbringing of their child is 'perhaps the oldest of the fundamental liberty interests recognized by the courts.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But parental rights are not absolute—"children have an interest

5

in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *Id.* (citations omitted). Thus, a parent's interests must be subordinated to a child's interests when considering a termination petition. *Id.* (citation omitted). A parent's rights may be terminated if the parent is unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* (citations omitted).

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1229 (citation omitted). Instead, we consider only the evidence and reasonable inferences that support the judgment. *Id.* (citation omitted). "Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous." *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, "we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment." *Id.* (citation omitted).

A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

6

(iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "DCS must prove the alleged circumstances by clear and convincing evidence." *K.T.K.*, 989 N.E.2d at 1231 (citation omitted). On appeal, Father challenges the sufficiency of the evidence supporting the trial court's judgment as to subsections (B), (C), and (D) of the termination statute.

*A. Conditions Remedied*

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Thus, MCDCS was required to establish, by clear and convincing evidence, only one of the three requirements of subsection (B). The trial court found that subsections (B)(i) and (B)(ii) were satisfied, and Father challenges both of those findings on appeal. But

7

because we find it to be dispositive, we address only Father's arguments regarding subsection (B)(i); that is, whether there was a reasonable probability that the conditions resulting in G.H.'s removal or the reasons for his placement outside Father's home would be remedied.

When determining if there is a reasonable probability that the conditions that resulted in a child's removal or the reasons for placement outside the home will not be remedied, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re I.A.*, 903 N.E.2d 146, 154 (Ind. Ct. App. 2009) (citations omitted). The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* Similarly, courts may consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, and failure to provide support. *Id.* The services offered to the parent and the parent's response to those services may also be considered as evidence of whether conditions will be remedied. *Id.*

The trial court concluded that there was a reasonable probability that the conditions resulting in G.H.'s removal from Father's care or placement outside the home would not be remedied. *See* Appellant's App. p. 17. The court explained that in the two years the case had been pending, Father had not demonstrated that he could provide for G.H. consistently and for the long-term.

We acknowledge that Father made progress at times during this case. But this progress was short-lived, and he ultimately failed to do everything the court required.

Despite his admitted mental-health issues, he did not take his prescribed medication consistently. He did not maintain stable housing or employment, and he did not complete the domestic-violence program ordered by the court. And Father engaged in criminal conduct throughout this case—he was arrested at least six times in the two years before the termination hearing and was convicted of domestic battery during that time. He has four felony convictions and was incarcerated on felony theft charges at the time of the termination hearing. Father admitted that his frequent arrests and periods of incarceration made him unavailable to parent G.H.

Father takes a different view of the evidence. Among other things, he contends that his repeated arrests and incarcerations were not for "significant" periods of time, he stopped taking his medication because his doctor retired, and he mistakenly believed he could stop communicating with MCDCS after the trial home visit began. In making these claims, Father asks us to reweigh the evidence, which we may not do.

The evidence supports the conclusion that there was a reasonable probability that the conditions resulting in G.H.'s removal from Father's care or placement outside the home would not be remedied.

### B. Best Interests

A determination of what is in the best interests of a child should be based on the totality of the circumstances. *See Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied.* A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the child's best interests. *Id.*

9

"The trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development are permanently impaired before terminating the parent-child relationship." *K.T.K.*, 989 N.E.2d at 1235 (citation omitted). Permanency is a central consideration in determining the best interests of a child. *Id.* (citation omitted).

Here, the trial court found that termination was in G.H.'s best interests because G.H. needed permanency. *See* Appellant's App. p. 17. The court concluded that due to his poor choices, Father had been unable to offer G.H. permanency in the past, and he had not shown an ability to provide permanency in the future. Indeed, the record shows that Father has been historically unable to provide G.H. with stability and permanency due to a number of factors, including his criminal conduct and mental-health issues. Those involved with the case cited the trauma G.H had experienced and his need for permanency, and they recommended terminating Father's parental rights. In his grandparents' home, G.H. had security, stability, structure, and love, and his grandparents hoped to adopt him.

This evidence supports the trial court's determination that termination of Father's parental rights was in G.H.'s best interests. *See In re A.I.*, 825 N.E.2d 798 (Ind. Ct. App. 2005) (testimony of caseworkers, together with evidence that the conditions resulting in placement outside the home will not be remedied, was sufficient to prove by clear and convincing evidence that termination was in child's best interests), *trans. denied.*

*C. Satisfactory Plan*

Father's final claim is that MCDCS failed to prove it had a satisfactory plan for G.H.'s care and treatment.

In order for the trial court to terminate a parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. Ind. Code § 31-35-2-4(b)(2)(D). That plan need not be detailed, so long as it offers a general sense of the direction the child will go after the parent-child relationship is terminated. *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008).

MCDCS's plan for G.H.'s care and treatment was adoption by his maternal grandparents. Caseworkers testified that G.H. is thriving in his grandparents' home, and G.H.'s grandparents provide everything that he needs. Father does not rebut this evidence. Instead, he argues unpersuasively that adoption is not necessary because G.H.'s grandparents have said that they will care for him even if they are not permitted to adopt him. Father has not shown that MCDCS's plan of adoption for G.H. was unsatisfactory. *See Castro v. State Office of Family & Children*, 842 N.E.2d 367 (Ind. Ct. App. 2006) (adoption is generally a satisfactory plan for a child's care and treatment after termination of parental rights), *trans. denied.*

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.