**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 01 2014, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) |
| R.J.L.E., (Minor Child), | ) ) |
| And | ) ) |
| B.E., (Father), | ) ) |
| Appellant/Respondent, | ) ) |
| vs. | ) No. 02A03-1311-JT-450 |
| | ) |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee/Petitioner. | ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D07-1301-JT-1

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

B.E. ("Father") appeals the termination of his parental rights to his son, R.J.L.E.[1] He argues that there is insufficient evidence to support the termination order. But Father failed to fully comply with the trial court's orders and failed to show that he is capable of providing a safe and stable home for his son. Because we conclude that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm.

## Facts and Procedural History

R.E. was born on June 30, 2005. Father was in prison when R.E. was born, and the child lived with H.L. ("Mother").[2] Father was released from prison when R.E. was five months old. Father began caring for R.E. at that time.

In 2008 the Allen County Department of Child Services ("ACDCS") responded to a report that Father hit R.E. in the face after an incident between R.E. and his sibling. ACDCS filed a petition alleging that R.E. was a child in need of services ("CHINS") but allowed R.E. to remain in Father's care.

In 2009 Father left R.E., then three years old, in a relative's care. That relative left R.E. home alone, and ACDCS was notified. After a temporary removal, R.E. was

---

[1] For simplicity were refer to the child as R.E.

[2] Mother consented to the child's adoption and does not participate in this appeal.

returned to Father's care. In early 2010 R.E. was again removed from Father's care due to Father's arrest for possession of cocaine and marijuana and driving while suspended. R.E. was placed with Father's aunt and uncle.

R.E. was adjudicated a CHINS in December 2008, and Father was ordered to do a number of things designed to facilitate reunification, including:

- Refrain from criminal activity
- Maintain appropriate housing
- Complete anger-management counseling
- Complete a family-functioning assessment
- Pay child support

*See* State's Ex. 6.

Father ultimately failed to comply with the trial court's order, and in January 2013 ACDCS filed a petition to terminate his parental rights. The trial court held three hearings on the termination petition in July 2013.

At the hearings, those involved in the case expressed concern about Father's criminal history and substance abuse. Father has six misdemeanor convictions and three felony convictions for nonsupport of a dependent, theft, and invasion of privacy. Tr. p. 159-62. Despite completing substance-abuse treatment, Father continued to use drugs, particularly crack cocaine and marijuana, throughout the termination proceedings. *Id.* at 55-69, 245-48; State's Exs. 16-18. On at least five occasions, Father simply refused to submit to a drug test, saying that he knew he would test positive for marijuana. Tr. p. 256-58. Father testified that he used drugs to help him cope with stress and depression despite the trial court's order not to engage in criminal activity—Father said that it was "my choice to [use drugs] again." *Id.* at 122-24.

3

Family Case Manager Stephanie Taylor ("FCM Taylor") explained that Father had recently completed some services, such as home-based services and anger-management classes, and was enrolled in a parenting class at the time of the termination hearings. But she testified that Father had not benefited from these services, citing his continued cocaine and marijuana use. *Id.* at 245-48. FCM Taylor agreed with the plan of termination followed by adoption:

> Due to [Father not benefitting from] parenting education, the continued testing positive for illegal substances, the [in]stability, just with the home, [in]stability with financial resources, just a lot of factors. [R.E.] is stable. He is doing well. His behavior has progressed in a positive way. He made very good grades, had A's and B's by the end of this school year. His behavior had improved by the end of the school year, so he's just doing, overall, very well.

*Id.* at 257.

Caseworkers also expressed concern about Father's lifestyle and ability to provide for R.E. At the time of the termination hearings, Father had been unemployed for more than a year and did not have a driver's license. *Id.* at 136, 156-57. He had also moved eight times during the termination proceedings. *Id.* at 148-52. Father's parenting history was another cause for concern. Father has seven other children, none of whom were in Father's care, and two of those children were involved in CHINS proceedings. *Id.* at 109-113. Father also admitted that he had a child-support arrearage at the time of the termination hearings. *Id.* at 137.

Brooke Neuhaus, the court-appointed special advocate ("CASA") assigned to the case, recommended terminating Father's rights, saying that he had not benefited from services and continued to use drugs. *Id.* at 175-76. She also explained that eight-year-old

R.E., who has special needs—he has anger-management issues and takes medication for Attention Deficit Hyperactivity Disorder, Major Depressive Disorder, and Reactive Attachment Disorder—was thriving in his current home:

> Speaking with the caregivers and the therapists, there have been some major issues with his behaviors in the home and at school, but with the help of the therapist that he is seeing and the stability that the caregivers [Father's aunt and uncle] are giving to him, he is improving immensely in the home. There are still some issues, but they are currently working on them.

*Id.* at 178-81. CASA Neuhaus said that Father's aunt and uncle planned to adopt R.E., and she expressed her belief that this plan was in R.E.'s best interests. *Id.* at 179. CASA Neuhaus also testified that R.E. had been the subject of legal proceedings for five years and deserved permanency. *Id.*

In October 2013 the trial court entered its order with findings terminating Father's parental rights. Appellant's App. p. 10-17.

Father now appeals.

## Discussion and Decision

On appeal, Father argues that there is insufficient evidence to support the termination order.

## Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations omitted). The parent-child relationship is one of our culture's most valued relationships. *Id.* (citation omitted). "And a parent's interest in the upbringing of their child is 'perhaps the oldest of the fundamental liberty interests

5

recognized by th[e] [c]ourts.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But parental rights are not absolute—"children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *Id.* (citations omitted). Thus, a parent's interests must be subordinated to a child's interests when considering a termination petition. *Id.* (citation omitted). Parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* (citations omitted).

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1229 (citation omitted). Instead, we consider only the evidence and reasonable inferences that support the judgment. *Id.* (citation omitted). "Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous." *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, "we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment." *Id.* (citation omitted).

A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

> (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

6

> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "DCS must prove the alleged circumstances by clear and convincing evidence." *K.T.K.*, 989 N.E.2d at 1231 (citation omitted). On appeal, Father challenges the sufficiency of the evidence supporting the trial court's judgment as to subsections (B), (C), and (D) of the termination statute.

### A. Conditions Remedied

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, ACDCS was required to establish, by clear and convincing evidence, only one of the

7

three requirements of subsection (B). The trial court concluded that ACDCS had proven subsection (B)(i); in other words, that there was a reasonable probability that the conditions that resulted in R.E.'s removal or the reasons for his placement outside Father's home would not be remedied. Appellant's App. p. 16.

In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, ___ (Ind. 2014) (citation omitted). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* (quotation omitted). The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against "habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.* (citations omitted). "We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *Id.* (citation omitted). In so doing, trial courts may find "that parents' past behavior is the best predictor of their future behavior." *Id.*

The trial court concluded that there was a reasonable probability that the conditions resulting in R.E.'s removal from Father's care or placement outside his home would not be remedied. The court expressed concern about Father's criminal history, his drug use during the termination proceedings, and R.E.'s special needs:

> [F]ather's historic pattern of behavior includes multiple criminal charges including the nonsupport of a dependent. He has not demonstrated stable

8

and consistent housing. Although he has recently completed parenting instructions, the court cannot conclude that his recent compliance will foretell a sustained ability to properly meet the child's special emotional needs.

*     *     *     *     *

The Father has only recently demonstrated compliance with services. Positive reports from parenting instruction and therapeutic visits have only been generated since March 2013. At the time of the close of evidence no professional working with the child or [] Father has recommended immediate placement of the child with [] Father. In addition, and despite a felony criminal record[,] [] Father continues to use illegal drugs and justified their use and medication for his mental condition. The court cannot conclude from [] Father's behavior that he has benefitted from services . . . .

Appellant's App. p. 16 (formatting altered).

We cannot say that it was clearly erroneous for the trial court to find that despite his recent compliance and completion of some services, Father's past behavior—including his criminal conduct—was the best predictor of his future behavior and inability to provide for R.E. *See E.M.*, 4 N.E.3d at ___ (trial courts may weigh a parent's prior history more heavily than efforts made only shortly before termination, and courts may find parents' past behavior to be the best predictor of their future behavior); *see also In re I.A.*, 903 N.E.2d 146, 154 (Ind. Ct. App. 2009) (courts may consider a parent's criminal history when determining whether the conditions that resulted in a child's removal will not be remedied). Father's arguments to the contrary—including his arguments that he cared for R.E. in the past, participated in court proceedings, and never used marijuana in R.E.'s presence—are invitations to reweigh the evidence, which we may not do.

The evidence supports the trial court's conclusion that there was a reasonable probability that the conditions resulting in R.E.'s removal or the reasons for his placement outside Father's home would not be remedied.

### B. Best Interests

Father also contends that termination of his parental rights is not in R.E.'s best interests.

In determining what is in a child's best interests, the trial court must look to the totality of the evidence. *See E.M.*, 4 N.E.3d at ___ (citation omitted). "In so doing, the trial court must subordinate the interests of the parent to those of the child." *Id.* The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* "Moreover, we have previously held that the recommendations of both the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that terminating is in the child's best interests." *Id.* (citation omitted).

FCM Taylor and CASA Neuhaus recommended termination of Father's rights, followed by adoption. They testified that Father had not benefited from services and continued to use illegal drugs. They also testified that R.E., who has special emotional needs, is thriving in his current placement with Father's aunt and uncle. Referencing this testimony, the trial court found that R.E.:

> [N]eeds a safe, stable, and nurturing home environment. The two caregivers that have worked to bring the child to emotional stability now wish to adopt him. The child has been in their care since he was five years old. [Mother]

10

believes adoption of the child by relatives serves his best interests.[3] The Court concludes that the termination of parental rights will provide the child with parents committed to the provision of therapeutic care, education, and consistency. The termination of parental rights serves the child's best interests.

Appellant's App. p. 16.

We conclude that the evidence supports the trial court's determination that termination of Father's parental rights is in S.T.'s best interests. *See E.M.*, 4 N.E.3d at ___; *see also In re S.P.H.*, 806 N.E.2d 874, 883 (Ind. Ct. App. 2004) (children's needs are too substantial to force them to wait while determining if their parents will be able to parent them).

### *C. Satisfactory Plan*

Father's final claim is that ACDCS failed to prove that it had a satisfactory plan for R.E.'s care and treatment.

In order for the trial court to terminate a parent-child relationship, it must find that there is a satisfactory plan for the care and treatment of the child. Ind. Code § 31-35-2-4(b)(2)(D). That plan need not be detailed, so long as it offers a general sense of the direction the child will go after the parent-child relationship is terminated. *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008). Adoption is generally a satisfactory plan, even when a potential adoptive family has not been identified. *See Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007), *trans. denied.*

Here, ACDCS's plan was adoption. Father's aunt and uncle, who have cared for R.E. for more than three years, indicated their desire to adopt R.E. if Father's parental

---

[3] Father argues that Mother's opinion is irrelevant. Appellant's Br. p. 15-16. But Mother's opinion aside, the evidence is sufficient to show that termination is in R.E.'s best interests.

rights were terminated.[4] FCM Taylor and CASA Neuhaus were in agreement with this plan. We cannot say that the trial court erred in concluding that this was a satisfactory plan for R.E.

Affirmed.

NAJAM, J., and BROWN, J., concur.

---

[4] Father challenges the suitability of his aunt and uncle as adoptive parents, but this was not a determination the trial court was required to make. The trial court was required to decide whether ACDCS had a satisfactory plan for the care and treatment of the child. A decision regarding the suitability of Father's aunt and uncle as adoptive parents is a different decision for a different day in a different court. *See In re Infant Girl W.*, 845 N.E.2d 229 (Ind. Ct. App. 2006) (discussing the roles of trial and probate courts in termination and adoption actions), *trans. denied*.