**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF
THE PARENT CHILD RELATIONSHIP OF:

M.G. (Minor Child),

and,

S.B. (Father),

    Appellant-Respondent,

      vs.

MARION COUNTY DEPARTMENT OF
CHILD SERVICES,

    Appellee-Petitioner.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 49A02-1312-JT-1028

**August 19, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

S.B. ("Father") appeals the termination of the parent-child relationship with his daughter, M.G. We affirm.

## Issue

The sole issue is whether there is sufficient evidence to support the termination of Father's parental rights.

## Facts

Father and A.G. ("Mother") are the parents of M.G., who was born March 2, 2012. On March 6, 2012, a child in need of services ("CHINS") petition was filed alleging that Mother's mental state hindered her ability to appropriately parent and that she had not successfully completed services in a prior unrelated CHINS case. Mother and Father were unable to provide M.G. with a safe and appropriate living environment while Mother was receiving inpatient care at a hospital and Father was struggling with substance abuse and domestic violence propensities. The Department of Child Services ("DCS") removed M.G. from the hospital and placed her with her maternal great-aunt ("Aunt") and great-uncle ("Uncle") to ensure M.G.'s safety. On the same day, the trial court held an initial

detention hearing and DCS was ordered to continue M.G.'s placement in Aunt and Uncle's care. On March 7, 2012, Mother admitted that M.G. was a CHINS.

On August 13, 2012, the trial court found that M.G. was a CHINS with respect to Father. The trial court ordered Father to engage in home-based therapy services and case management. Father only attended nine sessions during a seven-month period and did not make progress. Father's therapist recommended a psychological evaluation due to Father's decision making. Father did not undergo the evaluation and appeared resistant to services. DCS had concerns about the effects of the amount of hostility and frustration within Father's parents' home, where Father was living, and the trial court found that the environment was toxic. As a result, Father was told that he should relocate and find his own residence.

On December 17, 2012, during a periodic review hearing, the trial court found that home-based therapy, case management, and visitation were stopped because of non-compliance and no-shows as Father was not interested in setting up a visitation schedule. During a permanency hearing on March 25, 2013, Father did not appear because he was incarcerated, and the trial court found that Father had been in and out of jail and had not completed services even though he had the opportunity to do so. The trial court stated, "[t]his child is in a pre-adoptive home, with a sibling and neither parent has demonstrated an ability or a willingness to properly parent this child." Ex. 32. p. 97. M.G.'s permanency plan was then changed from reunification to adoption.

On April 8, 2013, DCS filed its termination petition. After a hearing, on November 14, 2013, the trial court issued an order terminating Father's parent-child relationship with M.G.[1] The trial court found in part:

> 19.  [Father] did not undergo a psychological evaluation.
>
> 20.  [Father] appeared resistant to services.
>
> 21.  [Father] is currently on work release, and plans to reside with parents when released from home detention. Concerns exist regarding the hostile environment of this home.
>
> 22.  [Father] is not currently employed, and worked on and off during the CHINS case.
>
> 23.  [Father] was convicted of one misdemeanor and three felonies during the CHINS case.
>
> 24.  [Father] was inconsistent in visiting [M.G.], his last visit being in September of 2012.
>
> * * * * *
>
> 26.  Continuation of the parent-child relationship poses a threat to [M.G.'s] well-being in that it would pose as a barrier in obtaining permanency for her through an adoption. [Mother] will not be available to provide her child with permanency in, at least, the near future. [Father] has not demonstrated the ability or stability to provide her with permanency, instead choosing to participate in criminal activity.
>
> 27.  [M.G.] has [sic] in the same placement all her life. This placement is with relatives, is preadoptive, and [M.G.'s] sister also resides in the home.
>
> 28.  [M.G.] has been observed thriving in her placement and as being very bonded with her caregivers.

---

[1] The trial court also terminated the parental rights of Mother. Mother does not appeal.

App. pp. 17-18.   The trial court concluded in part, "Termination of the parent-child relationship is in the best interest of [M.G.].  Termination would allow for her to be adopted into a stable and permanent home with her sister, and have her needs safely met."  Id. Father now appeals.

**Analysis**

"When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility."  In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010).  We consider only the evidence and reasonable inferences most favorable to the judgment.  Id.  "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses."  Id. (quoting Indiana Trial Rule 52(A)).  Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review.  Id.  "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment."  Id.  We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment.  Id.

A petition to terminate a parent-child relationship must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

5

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. I.A., 934 N.E.2d at 1133. We also keep in mind "that parental rights, while constitutionally protected, are not absolute and must be subordinated to the best interests of the child when evaluating the circumstances surrounding termination." McBride v. Monroe County Office of Family & Children, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

On appeal, Father does not challenge the trial court's findings supporting its conclusion that the parent-child relationship poses a threat to M.G.'s ability to obtain

6

permanency, but rather he argues that he did not pose a danger to M.G.'s well-being and it was not in M.G.'s best interests to terminate his parental rights. "In determining whether the continuation of a parent-child relationship poses a threat to the children, a trial court should consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation." In re A.P., 981 N.E.2d 75, 81 (Ind. Ct. App. 2012). Courts must also judge a parent's fitness to care for their child as of the time of the termination hearing, taking into consideration any evidence of changed conditions. Id. Courts also may consider any services offered by the DCS and a parent's response to those services. In re L.B., 889 N.E.2d 326, 339 (Ind. Ct. App. 2008), overruled on other grounds by In re G.P., 4 N.E.3d 1158 (Ind. 2014). Additionally, the failure to exercise the right to visit one's own children may demonstrate a lack of commitment to preserving the parent-child relationship. Id.

Here, there is a substantial amount of evidence showing that Father did not put forth much effort to make himself a suitable parent to M.G. The trial court concluded that his parents' home created a somewhat hostile environment, yet Father made no attempts to move. He was convicted of three felonies, and one misdemeanor while the CHINS case was pending, and failed to complete any of his parenting or drug classes. Father also did not participate in court ordered home-based reunification services that would have assisted him in creating an acceptable environment for M.G. Father has never held stable employment, does not have stable housing, and has not shown an interest in consistently visiting M.G. even after multiple visitation referrals. M.G. has never lived with Father and

7

last saw him when she was six months old in September of 2012. The trial court's findings regarding threat to M.G. is not clearly erroneous.

In determining whether termination is in the best interests of a child, courts may look beyond the factors identified by the DCS and look to the totality of the evidence. In re I.A., 903 N.E.2d 146, 155 (Ind. Ct. App. 2009). In making a best interests determination, courts must subordinate the interests of the parent to those of the child. Id. Courts need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Id. Termination of parental rights is in a child's best interests if his or her emotional and/or physical development is threatened. Stewart v. Randolph County Office of Family & Children, 804 N.E.2d 1207, 1212 (Ind. Ct. App. 2004), trans. denied.

Aunt and Uncle wish to adopt M.G. They have had M.G. since birth, have bonded with M.G., have been deemed appropriate foster parents, and have created an environment that M.G. has thrived in. They additionally provide an opportunity for M.G. to grow up with her sister. There is sufficient evidence that it is in the best interests of M.G. for Father's parent-child relationship to be terminated, so as to allow permanency of M.G. with Aunt and Uncle and avoid potential harm to her emotional or physical well-being.

## Conclusion

There is sufficient evidence to support the termination of Father's parental rights to M.G. We affirm.

Affirmed.

BAKER, J., and CRONE, J., concur.