## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joann M. Price
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Donald W. Wruck
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Termination of the Parent-Child Relationship of J.B. Jr. (Minor Child);

M.D. (Mother)

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

August 31, 2016

Court of Appeals Case No. 45A03-1602-JT-403

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Judge

Trial Court Cause No. 45D06-1509-JT-236

**Pyle, Judge.**

# Statement of the Case

M.D. ("Mother") appeals the termination of the parent-child relationship with her son, J.B., claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside Mother's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to the child's well-being; (3) termination of the parent-child relationship is in J.B.'s best interests; and (4) there is a satisfactory plan for J.B.'s care and treatment. Concluding there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm.

We affirm.

# Issue

> Whether there is sufficient evident to support the termination of the parent-child relationship.

# Facts

In April 2010, Mother gave herself and J.B.'s disabled father ("Father") intravenous doses of heroin. When Father turned blue, Mother telephoned 911. Father was taken to the hospital, and Mother was taken to jail after she

became involved in a physical altercation with Father's mother.[1] Seven-month-old J.B. was placed in foster care. Mother admitted that she had been "struggling with drug use for some years." (Tr. 22).

[4] At a hearing a few weeks later, Mother appeared to be suffering from drug withdrawal symptoms. She agreed to participate in an inpatient drug treatment program and immediately entered the Transitions Substance Abuse Program. J.B. was placed with her in the program in July 2010. Mother was unsuccessfully discharged from the program for violating the rules in December 2010. At that time, J.B. was placed back with his foster family.

[5] The following year, Mother attended substance abuse classes and supervised visits with J.B. However, in August 2012, Mother again relapsed on heroin and was referred to a second inpatient drug treatment program. Mother successfully completed the program and had several visits with J.B. until she relapsed on heroin again in July 2013. At that time, DCS suspended all of Mother's services and visits. Mother then entered a third treatment program. She was successfully discharged from the program in April 2015 but relapsed after one week. After contacting a fourth treatment program in Chicago, Mother discovered that she was pregnant. Her son was born with heroin in his meconium.

---

[1] Father later died in 2011.

[6] Thereafter, DCS filed a petition to terminate Mother's parental relationship with J.B. At a January 2016 hearing on the petition, the evidence revealed that Mother had not seen J.B. for two years. J.B.'s therapist testified that J.B. had worked very hard and had "formed a good secure attachment" to his foster family. (Tr. 154). Following the hearing, the trial court issued an order terminating Mother's parental rights. Mother appeals.

## Decision

[7] Mother argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining

whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-1230.

[9] A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[10] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in J.B.'s removal or the reasons for placement outside

the parent's home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to J.B.'s well-being.

[11] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in J.B.'s removal or the reasons for his placement outside Mother's home will not be remedied.

[12] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.*

[13] Here, our review of the evidence reveals that J.B. was removed from Mother because of her heroin use. Six years later, at the time of the termination hearing, Mother had participated in three treatment programs but was still using heroin. In addition, she had recently given birth to another son whose

meconium had tested positive for heroin. Mother's habitual heroin use during the six years that J.B. has been removed from her care is sufficient to show that the conditions that resulted in J.B.'s removal will not be remedied.

[14] Mother also argues that there is insufficient evidence that the termination was in J.B.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the circumstances. *In re A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997). An historical inability to provide adequate housing, stability, and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests. *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. In addition, a child's need for permanency is an important consideration in determining the best interests of a child. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010).

[15] Here, Mother has historically been and is currently unable to provide J.B. with stability and supervision because of her drug addiction. J.B., however, has flourished under the care of his foster parents. His therapist testified that he has developed a strong bond with them. This evidence is sufficient to show that termination is in J.B.'s best interests.

[16] Last, Mother argues that DCS does not have a satisfactory plan for J.B.'s care and treatment. This Court has previously explained that the plan for the care and treatment of the child need not be detailed, so long as it offers a general

sense of the direction in which the child will be going after the parent-child relationship is terminated. *In re L.B.,* 889 N.E.2d 326, 341 (Ind. Ct. App. 2008). Here, the DCS caseworker testified the plan for the care and treatment of J.B. is foster parent adoption. This is a satisfactory plan. *See In re A.N.J.,* 690 N.E.2d at 722.[2]

[17] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[18] Affirmed.

Bradford, J., and Altice, J., concur.

---

[2] Mother states in her appellate brief that foster parents have "separated from one another." (Mother's Br. 3). As support for this statement, Mother directs us to page 43 of her appendix, which is a one-page excerpt from the trial transcript. There, DCS asks J.B.'s therapist if "[f]oster mom and dad are separate." (App. 43). The following page of the transcript is not included in the appendix. However, the transcript itself reveals that DCS was simply asking J.B.'s therapist if foster mom and dad were given separate assessments. There is no evidence in the record which even suggests that foster parents have separated.