## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 23 2016, 6:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Joel Schumm<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Robert J. Henke<br>James D. Boyer<br>Deputy Attorneys General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of R.S., Jr. (Child) and R.S., Sr. (Father);<br><br>R.S., Sr. (Father),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | March 23, 2016<br><br>Court of Appeals Case No.<br>49A04-1508-JT-1141<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marilyn A. Moores, Judge;<br>The Honorable Larry E. Bradley, Magistrate<br><br>Trial Court Cause No.<br>49D09-1503-JT-96 |

**May, Judge.**

[1] R.S., Sr. (Father) appeals the involuntary termination of his parental rights to R.S., Jr. (Child). He argues the Department of Child Services (DCS) did not prove termination was in Child's best interests and did not have a satisfactory plan for care of Child following termination. We affirm.

## Facts and Procedural History

[2] Child was born to L.H. (Mother)[1] and Father on November 6, 2005. From 2009 to 2013, Father was incarcerated for Class B felony arson committed against Mother's property. That case included a protective order preventing Father from contacting Mother or Child until September 10, 2014.

[3] On April 4, 2014, DCS removed Child from Mother's care because Mother used illegal drugs while caring for Child and Father was unable to care for Child due to the protective order. The trial court held an initial hearing the same day during which Mother admitted Child was a Child in Need of Services (CHINS) and Father denied Child was a CHINS. The trial court held a pre-trial hearing on April 30, 2014, and Father appeared. The trial court set a fact-finding hearing for May 21, 2014.

[4] Father did not appear at the May 21, 2014, fact-finding hearing, but he was represented by counsel. The trial court heard evidence and on May 28, 2014,

---

[1] Mother consented to Child's adoption and does not participate in this appeal.

adjudicated Child a CHINS. Child was placed with Maternal Grandmother, where he remained during the CHINS and termination proceedings. On June 3, 2014, the trial court held a dispositional hearing. After the hearing, it ordered Father to participate in services and to complete a "parenting assessment and successfully complete all recommendations developed as a result of the parenting assessment. Such recommendations may include, but are not limited to, Parenting Classes, Home-Based Counseling Services, or other Counseling Services." (Ex. Vol. at 29.) The trial court also ordered Father to "enroll in, participate in, and successfully complete a Father Engagement Program." (*Id*.) Visitation was not ordered because of the protective order.

[5] The trial court held a review hearing on August 27, 2014, at which Father did not appear. The protective order preventing Father from contacting Child expired on September 10, 2014. The trial court held review hearings on December 3, 2014, and February 4, 2015, and Father did not appear. The trial court held a permanency hearing on March 4, 2015, and Father did not appear. The trial court found Father had not appeared at a hearing since April 30, 2014; had not exercised visitation with Child since before that date; and service providers had discharged Father from all services due to non-compliance. The trial court changed Child's permanency plan to adoption.

[6] On March 19, 2015, DCS filed a petition to terminate Father's parental rights to Child. On June 10, 2015, the trial court held a pre-trial hearing and Father attended. The trial court reappointed Father counsel, but did not grant his

request to reinstate services. The trial court instead ordered Father to participate in supervised visitation with Child. Of the five visits scheduled with Child, Father cancelled two and had to leave two early. Child became "depressed" and "blame[d] himself," (App. at 13), for Father's lack of participation in visits. The trial court held a fact-finding hearing on the termination petition on July 21, 2015. Father was present with counsel. The trial court terminated Father's parental rights on August 5, 2015.

## Discussion and Decision

[7] We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and, second, whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen*

*v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the decision, we affirm. *In re L.S.*, 717 N.E.2d at 208.

[9]     "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A juvenile court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[10]    To terminate a parent-child relationship in Indiana, the State must allege and prove:

> (A)    that one (1) of the following is true:
> (i)      The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)    The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B)    that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8. Father challenges only two of the court's conclusions: that termination was in the best interest of Child; and that DCS had a satisfactory plan for Child.

### *Best Interests of Child*

[11] Pursuant to Ind. Code § 31-35-2-4(b)(2)(C), DCS must provide sufficient evidence "that termination is in the best interests of the child." In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be

remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[12] A parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports finding termination of parental rights is in the best interests of the children. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*. Father argues the following findings are inconsistent with the court's conclusion that Child's best interests would be served by termination of Father's parental rights:

> 36. [Father] and [Child] share a bond. [Child] does love his father.

> 37. [Child] would like to stay with his grandmother and likes to visit with [Father].

> \* \* \* \* \*

> 49. Termination of the parent-child relationship is in the best interests of [Child]. Termination would allow him to be adopted into a stable and permanent home where his needs will continue to be met. It would be best for [Child] to be able to keep visiting [Father] and paternal grandmother, but staying in his placement is in his long term interests.

(App. at 14-5.)

However, there exists other evidence and findings regarding Father's lack of compliance with the trial court's order to complete services and participate in visitation with Child and therefore we cannot reverse.

[13] Child's therapist testified Child was harmed by Father's inability to complete services and visit with Child:

> [Child] withdraws into himself. He gets very depressed, very sad. [Like] a lot of children, he blames himself, he thinks it is his fault that the visit is not taking place even though we try to explain that it is not. They still see it as maybe I did something, or maybe I said something or maybe that is why they don't want to visit with me.

(Tr. at 85.) Father's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence and judge the credibility of witnesses).[2]

[14] In addition, it is not in Child's best interests to leave Child in permanency purgatory while giving Father another chance to participate in services and

---

[2] Father relies heavily on *Rowlett v. Vanderburgh Cty. OFC*, 841 N.E.2d 615 (Ind. Ct. App. 2006), *trans. denied*, in which we held extending the CHINS proceedings as an alternative to termination of father's parental rights was in the best interests of the child because father had made efforts to maintain a relationship with child and the child was in relative care. *Rowlett* does not control. Rowlett was incarcerated and unable to participate in services and visitation, but he was in contact with the Office of Family and Children and maintained regular contact with his child. In this case, Father was not incarcerated at the time of the CHINS adjudication and did not participate in services despite being ordered to do so. Father did not attend numerous hearings regarding the CHINS and termination proceedings, and he did not maintain contact with DCS. When given an opportunity to visit with Child, Father missed two of five visits and left two others early. Father did not demonstrate the effort put forth *Rowlett*.

visitation. *See In re Campbell*, 534 N.E.2d 273, 275 (Ind. Ct. App. 1989) (appellate court "unwilling to put [child] on shelf until [parents] are capable of caring for her appropriately"); *see also Baker v. Marion County OFC*, 810 N.E.2d 1035, 1040 n.4 (Ind. 2004) (limitations on trial court's ability to approve long-term foster care are designed to ensure a child does not "languish, forgotten, in custodial limbo for long periods of time without permanency") (quoting *In re Priser*, No. 19861, 2004 WL 541124 at *6 (Ohio Ct. App. March 19, 2004)). The trial court did not err in its findings and conclusions regarding the best interests of Child.

### *Satisfactory Plan for Care*

[15] Pursuant to Ind. Code § 31-35-2-4(b)(2)(D), DCS must provide sufficient evidence there is a satisfactory plan for the care and treatment of the child. We have held "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008). The trial court found there was a satisfactory plan; Child was to be adopted by Maternal Grandmother.

[16] Father argues the trial court's finding "[i]t would be best for [Child] to be able to keep visiting Father," (App. at 15), is "contradictory and inconsistent" with the plan for adoption and the plan for adoption does not offer "the requisite 'general sense of direction.'" (Br. of Appellant at 16.) However, Father does not address other findings regarding the relationship between Father and Child. The trial court found:

47. . . . At the time of trial [Father] had not demonstrated his willingness to parent [Child] full-time. He ignored the ChINS [sic] case until after this termination case was filed. Then, when his request for visits was granted, he did not fully follow through with those. At the time of trial [Father] had not demonstrated the ability to appropriately parent [Child], lacking stable housing and income.

48. Continuation of the parent-child relationship poses a threat to [Child's] well-being in that it would pose as [sic] a barrier to obtaining the permanency that he needs and strives through an adoption. To do otherwise could threaten the great progress [Child] has made in his special needs. Given additional time, and if [Father] was to follow through with services, he would have to complete therapy with [Child], still undergo a parenting assessment and obtain stable housing and an adequate income. After having the ChINS [sic] matter pend [sic] for fifteen month [sic], [Father] would be just beginning.

49. Termination of the parent-child relationship is in the best interests of [Child]. Termination would allow him to be adopted into a stable and permanent home where his needs will continue to be met. It would be best for [Child] to be able to keep visiting his father and paternal grandmother, but staying in his placement is in his long term interests.

50. Family Case Manager Deen, who has been on the ChINS [sic] case since it was filed, believes adoption is in [Child's] best interests given that he is bonded and comfortable with his grandmother. She does not believe [Father] would follow up if given more time and adoption would provide permanency for [Child].

51. There exists a satisfactory plan for the future care and treatment of [Child], that being adoption.

52. Guardian ad Litem Williams recommends adoption and does not feel giving [Father] additional time would be in [Child's] bests [sic] interests. He knows [Child's] wishes. He has valid concerns regarding [Father] not being in a stable position now and his past history of no follow up.

(App. at 14-5.) While it seems Father and Child have a bond, we cannot say the trial court's conclusion is unsupported by the findings. The plan for Child's care subsequent to termination is adoption by maternal grandmother. We find no error with the juvenile court's decision. *See In re L.B.*, 889 N.E.2d at 341 (the plan for Child's care subsequent to termination "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated").

# Conclusion

[17] DCS proved termination of Father's parental rights to Child was in Child's best interests and there was a satisfactory plan for Child's care after termination. Accordingly, we affirm.

[18] Affirmed.

Najam, J., and Riley, J., concur.