## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2018, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Termination of the Parent-Child Relationship of:

A.A. (Minor Child), A.A.

and

W.C.,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 29, 2018

Court of Appeals Case No.
18A-JT-01197

Appeal from the Wayne Superior
Court 3

The Honorable Darrin M.
Dolehanty, Judge

Trial Court Cause No.
89D03-1708-JT-000017

**Tavitas, Judge.**

## Statement of the Case

A. A. ("Mother") and W.C. ("Father") appeal the termination of their parental rights to A.A. (the "Child"). We affirm.

## Issues

Mother and Father state the issue as whether there is sufficient evidence to support the termination of Mother's and Father's parental rights. Based upon Mother's and Father's argument in their brief, we restate the issue as whether the Department of Child Services ("DCS") proved by clear and convincing evidence that DCS had a satisfactory plan for the care and treatment of the Child.

## Facts

Mother gave birth to the Child in September 2002. Father is the alleged father of the Child. DCS was contacted on March 22, 2016, because the Child's sister[1] was the victim of a sexual assault, and had been taken to the hospital. While receiving care for her sexual assault, the Child's sister tested positive for THC and cocaine. DCS discovered that Mother did not have stable housing for herself or the children. Mother and the children were living in a structure with no electricity and no water, and they recently were locked out of that structure.

---

[1] Mother has three daughters who are not the subjects of this appeal. The Child is Mother's only son. Collectively, Mother has four children ("the children"). The assault on the Child's sister, and subsequent positive drug test, triggered the call to DCS. The Child's sister, who was sexually assaulted, is the same sister who suffered from drug addiction issues.

DCS was able to obtain placement in a domestic violence shelter for Mother and the Child's three sisters. The Child was not living with Mother and the Child's sisters at that time and was instead staying with a family member; the arrangement however, was not consistent. On April 6, 2016, Mother and her daughters were asked to leave the shelter. Both Mother and Mother's daughter, who was sexually assaulted, admitted to substance abuse.

[4] DCS filed a Child in Need of Services ("CHINS") petition on April 7, 2016. Mother admitted the Child was a CHINS and requested residential substance abuse therapy with the assistance of DCS. Father also admitted the Child was a CHINS, and that Father cannot afford to provide services for the Child due to Father's incarceration and Father's need for substance abuse treatment. The trial court authorized the Child to be removed from Mother's care on April 8, 2016 due to allegations of "abuse and/or neglect." Appellant's App. Vol. II p. 12. The court appointed special advocate ("CASA") director Karen Bowen ("Bowen") stated that the Child was originally removed from parents due to "homelessness" and "allegations of drug use." Tr. Vol. II p. 77. The trial court then issued an order determining the Child was a CHINS on May 13, 2016.[2] The dispositional decree was issued on July 7, 2016, as to Mother, and on August 25, 2016, as to Father.

---

[2] Mother's children previously were the subjects of CHINS proceedings in 2004.

[5] The dispositional decree as to Mother required that she: (1) contact DCS weekly; (2) notify DCS of any changes of address; (3) notify DCS of any new arrest or criminal charges; (4) allow DCS to visit the home; (5) keep all appointments with DCS; (6) sign all releases necessary for DCS; (7) maintain suitable, safe, and stable housing; (8) secure and maintain a legal source of income; (9) not use, consume, trade, distribute, possess, sell, or manufacture any illegal controlled substances; (10) obey the law; (11) complete a parenting assessment; (12) complete a substance abuse assessment; (13) submit to random drug screenings; and (14) attend all scheduled visitations with the Child. The dispositional decree as to Father required that he do the same as Mother in addition to the requirement that Father: (1) notify DCS when he is released from incarceration; and (2) pay child support.

[6] Mother was given assistance by DCS and her family case manager ("FCM"), Lori Sumwalt, to help her overcome her homelessness and addiction problems. DCS paid the deposit and first month's rent for an apartment for Mother while the children were in DCS's care. Mother did not make any subsequent rent payments and was eventually evicted from the apartment. On May 25, 2016, Sumwalt drove Mother to a thirty-day inpatient substance abuse treatment program, and Mother remained in the program for nine days. Mother complied with services of the CHINS case in September 2016. Beginning in October, however, Mother's participation in the programs began to dwindle, and she failed to attend service provider appointments in November 2016, and attended

only one in December 2016. Father did not participate in the underlying CHINS case for the first several months.

[7] Mother and Father were both arrested on January 2, 2017, and remained in jail for two days. Following the arrest, the trial court suspended parenting time for both Mother and Father unless Mother and Father would agree to participate in "therapeutic visitation." Appellant's App. Vol. II p. 99. Mother participated in the intake process to begin the therapeutic visitation, but Mother did not attend any therapeutic visitation sessions. Father did not contact Sumwalt from January through August 2017. Father was then arrested again. Father did participate in some services while in jail in 2016 and 2017. Mother was again arrested in February 2017.

[8] Mother also ceased contact with Sumwalt for several months. During the pendency of the CHINS case, emergency responders were called twice in 2017 to revive Mother after apparent overdoses. Emergency responders were also called in 2017 to revive Father after apparent overdoses. Mother failed ten drug tests between 2016 and 2017. Father failed a drug test in February 2017.

[9] Initially, the permanency plan was reunification. However, the trial court changed the Child's plan to adoption, pursuant to an order on April 7, 2017. DCS filed the petition for termination of the parent-child relationship on August 14, 2017. On February 22, 2018, the trial court held a fact-finding hearing. Counsel for DCS, the CASA director, Father's counsel, Mother's counsel, and Mother were present on the first day of the fact-finding hearing.

Father did not attend the fact-finding hearing on either day. Mother was not present for the second day of the fact-finding hearing. The Child resided at the Child's current foster home since December 27, 2016.

[10] The trial court entered findings of fact and conclusions of law granting the petition to terminate parental rights on April 12, 2018. The trial court found:

> 3) There is clear and convincing evidence to conclude that termination of parental rights is in [the Child's] best interest. [The Child] is fifteen (15) years old now, and has been outside of his parents' care for two (2) full years. [The Child] is successfully placed into an adoptive foster home, is doing great in that home, and is doing equally great at school. He struggles, from time to time, with marijuana use, but is otherwise living within a normal child's life. He is ready to close out the trauma coming from his parents' lifestyle, and to be adopted by his foster parent.
>
> 4) There is clear and convincing evidence of a satisfactory plan for [the Child's] care and treatment once parental rights are terminated, that plan being adoption.

Appellant's App. Vol. II p. 105.

## Analysis

[11] Mother and Father challenge the termination of their parental relationships with the Child. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests

recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *In re K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[12] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re C.G.,* 954 N.E.2d 910, 923 (Ind. 2011). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)).

[13] When granting a petition for termination of parental rights pursuant to Indiana Code Section 31-35-2-8(c), "The trial court shall enter findings of fact that support the entry of the conclusions required by subsections (a) and (b)."[3] Here,

---

[3] Indiana Code Sections 31-35-2-8(a) and (b), governing termination of a parent-child relationship involving a delinquent child or CHINS, provide as follows:

  (a) Except as provided in section 4.5(d) of this chapter, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship.

the trial court did enter findings of fact and conclusions of law in the trial court's order granting DCS's petition to terminate Mother's and Father's parental rights. When reviewing findings of fact and conclusions of law entered in a case involving the termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[14] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)     that one (1) of the following is true:
>
> > (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

---

(b)  If the court does not find that the allegations in the petition are true, the court shall dismiss the petition.

> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> > (C) that termination is in the best interests of the child; and
>
> > (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

[15] Mother and Father argue only that the evidence was insufficient to support the findings of fact and conclusion of law that there is a satisfactory plan for the care and treatment of the Child. Mother and Father do not appear to challenge the other findings of fact and conclusions of law. Therefore, we focus our analysis on the evidence regarding the satisfactory plan.

[16] "DCS must provide sufficient evidence there is a satisfactory plan for the care and treatment of the child." *In re J.C.,* 994 N.E.2d 278, 290 (Ind. Ct. App. 2013) (citing Ind. Code § 31-35-2-4(b)(1)(D)), *reh'g denied.* The plan "'need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated.'" *Id.* (citing *In re L.B.,* 889 N.E.2d 326, 341 (Ind. Ct. App. 2008)). Several witnesses

testified that the plan for the Child after termination of Mother's and Father's parental rights was adoption.

[17] Bowen was appointed as the CASA for the Child and Mother's other children beginning in April 2016. At the fact-finding hearing, Bowen stated that the Child "wants termination of [Mother's and Father's] parental rights to happen, because [the Child] wants to proceed with his life and be adopted." Tr. Vol. II pp. 67-68. The Child also specifically stated that the Child wants to be adopted by his current foster parents. Bowen stated that the Child has "stopped smoking weed, [the Child] hasn't gotten in that much trouble, [the Child] has kept his grades up at school, [the Child has] played basketball, and [the Child] has settled in his foster home and really enjoys his foster family and wants to remain a part there." *Id.* at 68. Bowen stated that the Child's current foster home is a "pre-adoptive" foster home and that the Child looks at C.C. ("Foster Mother") as a "parental" figure. *Id.* at 69.

[18] Sumwalt also testified that the permanency plan for the Child is adoption. DCS called Foster Mother to testify. Mother's counsel objected to the calling of Foster Mother. The trial court allowed Foster Mother to testify, but limited the scope. While some of Foster Mother's testimony was limited, Foster Mother did testify that, to her knowledge, the Child would want to remain in her home, "however that might be done." *Id.* at 91. Foster Mother stated she has spoken to the Child about this "many times." *Id.*

[19] This evidence is sufficient to meet the requirement of a satisfactory plan in place for the Child after termination of Mother's and Father's parental rights. The trial court found that the Child is currently in the care of Foster Mother and that Foster Mother is willing to adopt, if permitted to do so. Mother and Father argue that the evidence is insufficient as to the trial court's finding on this latter point. We need not, however, address whether the evidence is sufficient to support the specific finding that Foster Mother wants to adopt the Child. There was sufficient evidence to support the finding that the plan is adoption, and this alone is enough to meet the requirement that there be a satisfactory plan in place. *See In re J.C.,* 994 N.E.2d at 290. Therefore, we cannot say that the finding regarding the satisfactory plan was clearly erroneous.

## Conclusion

[20] The evidence was sufficient for the trial court to conclude there was a satisfactory plan of care for the Child if the parental rights were terminated. Accordingly, we affirm.

[21] Affirmed.

Brown, J., and Altice, J., concur.